Dennis M. Moskal, Esq., CFE, CEDS
Law Offices of Dennis M. Moskal, LLC
Manor Building
564 Forbes Avenue, Suite 1006
Pittsburgh, PA 15219
Direct: (412) 992-0948
Facsimile: (412) 927-1147
dennis@harassment-doctor.com
*Attorney for Plaintiff*

___

**UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| VALERIE M. BURT, | CIVIL DIVISION |
| Plaintiff, | |
| v. | CASE NO.:  20-cv-725   |
| RIVERBEND FOODS, LLC, | |
| Defendant. | |

**COMPLAINT OF DISCRIMINATION
AND RETALIATION**

VALERIE M. BURT, by and through her legal counsel, files the following Complaint in Civil Action against Defendant, RIVERBEND FOODS, LLC and avers as follows:

**The Parties**

1. Plaintiff, VALERIE M. BURT (hereinafter "Plaintiff"), is an adult individual, who resides at 811 Railroad Street, Turtle Creek, PA 15145.

2. Defendant, RIVERBEND FOODS, LLC (hereinafter "Defendant-Employer"), is a foreign corporation with a business address of 1080 River Avenue, Pittsburgh, Pennsylvania 15212.  It was located in what was once the Heinz facility.

3. Defendant-Employer operates as a packaged food manufacturing company. The company offers baby food, soups, broths, gravies, sauces, and cold brew coffee to North American clients.

4. At all times relevant hereto, Defendant-Employer acted or failed to act by and through its duly authorized agents, servants and employees, who conducted themselves within the scope and course of their employment.

## Jurisdiction

5. The jurisdiction of this court is invoked pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, as amended by the Civil Rights Act of 1991; Americans with Disabilities Act of 1990, 42 U.S.C. §12101, and 28 U.S.C. §451, 1331, 1343 and 1345.

6. Plaintiff has satisfied all the procedural and administrative requirements set forth in Section 706 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §1367:

   a. Plaintiff filed an administrative charge with the U.S. Equal Employment Opportunity Commission (EEOC) that stated claims for discrimination on the basis of sex and disability and retaliation.

   b. The aforementioned charge was docketed by the EEOC at 533-2019-00337.

   c. Plaintiff dual-filed her charge with the Pennsylvania Human Relations Commission (PHRC).

   d. On February 19, 2020, the EEOC issued a "Right to Sue" notice allowing Plaintiff to bring her claims in federal court. A true and correct copy of said Notice is attached as Exhibit 1.

7. Plaintiff filed her lawsuit with the United States District Court for the Western District of Pennsylvania within ninety (90) days of the date of the issuance of the right to sue notice.

## Background Facts[1]

8. In 2003, Plaintiff was hired by Delmonte Foods as a Factory Production employee at a rate of pay of $9.97 an hour.

9. From 2003 to around March/April 2013, Plaintiff never was injured at work. She had no worker's compensation claims.

10. From 2003 to March/April 2013, Plaintiff did not have any disciplinary warnings or notices, except one highly subjective warning alleging that she was disrespectful to a company doctor.

11. Plaintiff's performance was exceptional into the beginning of the year 2013 when she was making $19.00 an hour approximately as a starch operator in the starch room.

12. In March/April 2013, Plaintiff was severely injured when she slipped and fell on some chicken fat that was left on the floor in the kitchen. She sustained herniated disks to her spine at L4 and L5. She also had a broken collar bone and a ruptured rotator cuff.

## Employer Finds a Way to Demote Plaintiff

13. After Plaintiff's physician Dr. Silvaggio submitted many work restriction forms which included words that Plaintiff could try working longer hours as tolerated, Plaintiff's physician submitted one that did not include said language and Plaintiff handwrote it in, realizing her physician inadvertently forgot such language.

14. As a result, Plaintiff was disciplined for falsifying records and forced to sign a last chance agreement.

15. After the last chance agreement, Plaintiff was put in the inspections department, which is seen as a punishment to those coming back from worker's compensation leaves. Human Resources said it was "temporary."

## Brown Keeps Plaintiff in Inspections

16. After being sent 'temporarily' to inspections, Plaintiff had stated her desire to be returned to her working in the kitchen; however, allegedly due to her re-

---

[1] Paragraphs 8 through 26 are offered to show a history of discriminatory treatment by Respondent-Employer which culminated in the current discriminatory treatment and retaliation against her set forth in paragraphs 27-47.

3

strictions, Mike Brown, the safety manager, had kept Plaintiff in inspections for an inordinate amount of time claiming it was until she is free of restrictions. Inspections is commonly referred to as "The Dungeon." It was seen as a punishment by employees.

17. Brown's stated desire to keep Plaintiff in the inspections until she is completely free of restrictions was a pretext to hide discriminatory animus, namely sex and disability discrimination. His reason given in justification of this course of action cannot be the real reason for his actions. His actions also amount to retaliating against employees for exercising their rights to pursue worker's compensation claims.

18. Plaintiff's restrictions would have allowed her to be in her own department, namely kitchen prep.

### Supervisors Desire to Move Plaintiff to Other Departments

19. Supervisors have tried to move Plaintiff and Brown has told them no. Supervisors Dennis Reese, Dan Grant and Ron Kebler have voiced their desire that Plaintiff be moved back to kitchen prep. They had advised her that they asked Brown, who has for unknown reasons, prevented her from getting moved back to the kitchen.

### Kitchen Work is Within Plaintiff's Restrictions

20. Plaintiff's restrictions allow her to lift twenty to thirty (20-30) pounds consistently up to eighty (80) pounds, and her job role in the kitchen does not require her to lift more. The kitchen duties do not require her to go up to ladder.

21. Brown has falsely claimed to Plaintiff that her restrictions prevent her from being in the kitchen.

22. In the kitchen, there are several other things that Plaintiff is able to do including but not limited to a multitude of inspection roles, including baby food inspection; inspections for different soup and babyfood; gravy weigh-ups; vegetable inspection and inspections of noodles for bugs and rodent feces.

### Male Employees with Physical Issues are Allowed in Kitchen

23. Male employees, such as Ted Platta, have been allowed to be stationed in the kitchen despite physical ailments or conditions. He had back restrictions and was in the starch room. He had previously fallen down the steps. He was still allowed in the kitchen after he was hurt.

24. There was a third man named Jeff with a really bad knee allowed in kitchen. He did not even have a work injury, but he is still there.

25. A half year ago, Sean Hawkins had heart attack and was taken out by ambulance. He is still in kitchen.

### Employer's Actions Refute Brown's Concern Over Restrictions

26. Despite Brown's assertions that Plaintiff needs to be in inspections until she is free from restrictions and cannot be moved for any reason, the actions of the Defendant-Employer suggest it has nothing to do with her restrictions. When it has suited Defendant-Employer, it has on a day to day basis moved Plaintiff wherever they wanted her regardless of her restrictions, including moving her for a day to baby food as a label inspector for ten hours, several times to the warehouse to inspect labels, and many other areas.

### Brown Expresses Discontent with Plaintiff's Restrictions

27. On May 8, 2018, Plaintiff had a meeting with Human Resources regarding transferring Plaintiff to the kitchen with restrictions. During the meeting, Brown incredulously stated, "You are the only one I know with a back injury this long." Jeremy Nolan and Dan Komora. Plaintiff responded by saying, "It's not a back injury, it's a spinal injury."

28. On June 21, 2018, Plaintiff was transferred back into the kitchen in the starch room, where she would make the base for the soup and run the forklift.

29. At the time she was moved into the kitchen, Plaintiff immediately discussed her restrictions with Julianna Saviola the new very young supervisor in her early 20's.

30. At first Plaintiff was a helper that did everything except the computer and paperwork; thereafter, she was doing the same role and tasks as the male starch operators who were making Grade 3.

31. As helper that was driving the forklift, Plaintiff was due $20 an hour plus some additional pay incentives.

32. Thereafter, she was the starch operator.

33. After Plaintiff got her first paycheck in the kitchen on or about the end of July 2018, she noticed that she was not moved up to a Grade 3 as expected since she took

on the starch operator position. She also noticed that they deducted your lunches for the first time.

34. Male starch operators were getting $21.84 an hour.

### Plaintiff Complains about Unequal Pay between Men and Women

35. After seeing her first paycheck in August 2018, Plaintiff complained to her supervisor regarding the unequal pay between her and the male operators.

36. Saviola said that she would get back to Plaintiff with an answer from Human Resources.

37. Saviola thereafter came back with a response, stating that it was because she was on worker's compensation, which clearly shows that HR was made aware of a complaint of unequal pay between men and women.

38. On August 23, 2018, Plaintiff was assigned to baby food for the day. Saviola needed someone to drive the forklift on another line. In response, she took Arabo Allen from babyfood where he was working together with Plaintiff and had him drive the forklift.

39. Plaintiff adamantly objected stating that the removal of her coworker would put her in a situation, whereby she was unable to work within her restrictions.

40. Plaintiff asked Saviola to move her to the forklift due to the fact that there were so many carts containing soup ingredients. In fact, there was uncharacteristically, more carts. Saviola refused to move her.

### Plaintiff Filing Unequal Pay Claim

41. On August 24, 2018, Plaintiff started the process to file a grievance relating to the unequal pay between herself and the male starch operators; however, her union official David Strain, was unable to accomplish the task for unknown reasons.

42. Strain asked for an extension from Grant Holloway at Human Resources to file a grievance alleging discrimination in pay for Plaintiff.

### Plaintiff is Given the Axe

43. On Thursday, August 30, 2018, Plaintiff was put in the warehouse again.

44. Plaintiff knew that some fix was in since a new, very young female employee was performing her tasks as starch operator at the time.

45. At 9:30 a.m., Plaintiff was told by the lead worker that human resources wanted to see her.

46. Plaintiff went up to human resources, and Grant Holloway, Mike Brown and David Strain, the Union Steward, were sitting around a table.

47. Brown said to Plaintiff that she was being let go, meaning she was fired.

**COUNT I – GENDER DISCRIMINATION IN VIOLATION OF TITLE VII OF CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §2000e**

48. Plaintiff incorporates paragraphs 1 through 47 as if fully set forth herein.

49. Plaintiff, who is female and disabled, is a member of a protected class.

50. Defendant-Employer discriminated against Plaintiff in the terms, conditions and privileges of her employment because of her gender and disability, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e.

51. Plaintiff was subject to a multitude of adverse employment actions, including subjecting her to a hostile work environment, preventing and/or blocking her from advancement or promotion and keeping her in the "Dungeon." Ultimately, she was unjustly terminated.

52. Defendant-Employer's violation of the Civil Rights Act was undertaken with malice or reckless indifference to her federally protected right to not be discriminated against because of her gender.

53. As a direct and proximate result of Defendant-Employer's unlawful disciplinary action and demotion of Plaintiff, she has suffered pecuniary losses including in the form of lost pay, wages and benefits, overtime, holiday pay, clothing allowance, vacation, sick and personal days, medical benefits, dental and vision benefits.

54. As a direct and proximate result of Defendant-Employer's unlawful and discriminatory disciplinary action and demotion, she has suffered extreme emotional distress, depression, stress, anxiety, emotional pain, suffering, inconvenience, mental anguish, embarrassment, humiliation, loss of enjoyment of life, and other non-pecuniary losses.

### COUNT II – RETALIATION IN VIOLATION OF TITLE VII OF CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §2000e-3(a)

55. Plaintiff incorporates paragraphs 1 through 54 as if fully set forth herein.

56. Defendant-Employer retaliated and/or discriminated against Plaintiff in the terms, conditions and privileges of her employment because of her opposition to sex discrimination and reporting it, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-3(a).

57. Defendant-Employer's violation of the Civil Rights Act was undertaken with malice or reckless indifference to her federally protected right to not be discriminated against because of her disability.

58. As a direct and proximate result of Defendant-Employer's unlawful and discriminatory treatment, she has lost her job and suffered pecuniary losses including in the form of lost pay, wages and benefits, overtime, holiday pay, clothing allowance, vacation, sick and personal days, medical benefits, dental and vision benefits.

59. As a direct and proximate result of Defendant-Employer's unlawful and discriminatory treatment, she has suffered extreme emotional distress, depression, stress, anxiety, emotional pain, suffering, inconvenience, mental anguish, embarrassment, humiliation, loss of enjoyment of life, and other non-pecuniary losses.

### COUNT III – DISABILITY DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITY ACT (ADA)

60. Plaintiff incorporates paragraphs 1 through 59 as if fully set forth herein.

61. In May 2018, Plaintiff was a qualified individual with a disability and/or perceived as having a disability and so is within the protections of the Americans with Disabilities Act (hereinafter "ADA").

62. Defendant-Employer discriminated against Plaintiff in the terms, conditions and privileges of her employment because of her disability, in violation of the Americans with Disabilities Act.

63. Plaintiff was subject to a multitude of adverse employment actions, including subjecting her to a hostile work environment, preventing and/or blocking her

from advancement or promotion and keeping her in the "Dungeon." Ultimately, she was unjustly terminated.

64. Defendant-Employer's violation of the Civil Rights Act was undertaken with malice or reckless indifference to her federally protected right to not be discriminated against because of her disability.

65. As a direct and proximate result of Defendant-Employer's unlawful and discriminatory treatment, she has suffered pecuniary losses including in the form of lost pay, wages and benefits, overtime, holiday pay, clothing allowance, vacation, sick and personal days, medical benefits, dental and vision benefits.

66. As a direct and proximate result of Defendant-Employer's unlawful and discriminatory treatment, she has suffered extreme emotional distress, depression, stress, anxiety, emotional pain, suffering, inconvenience, mental anguish, embarrassment, humiliation, loss of enjoyment of life, and other non-pecuniary losses.

### COUNT IV – VIOLATIONS OF PENNSYLVANIA HUMAN RELATIONS ACT
### 43 P.S. §951-963

67. Plaintiff incorporates paragraphs 1 through 66 as if fully set forth herein.

68. Plaintiff, as an individual who was female, disabled and/or perceived as disabled at the time of the incidents in question, is a member of a protected class.

69. Defendant-Employer discriminated against Plaintiff in the terms, conditions and privileges of her employment because of her gender, disability, and/or perceived disability, in violation of the Pennsylvania Human Relations Act ("PHRA").

70. Plaintiff was subject to a multitude of adverse employment actions, including subjecting her to a hostile work environment, preventing and/or blocking her from advancement or promotion and keeping her in the "Dungeon." Ultimately, she was unjustly terminated.

71. Defendant-Employer's violation of PHRA was undertaken with malice or reckless indifference to her state protected right to not be discriminated against because of her protected status.

72. As a direct and proximate result of Defendant-Employer's unlawful and discriminatory disciplinary actions and demotion, she has suffered pecuniary losses in-

cluding in the form of lost pay, wages and benefits, overtime, holiday pay, clothing allowance, vacation, sick and personal days, medical benefits, dental and vision benefits,

73. As a direct and proximate result of Defendant-Employer's unlawful and discriminatory treatment, she has suffered extreme emotional distress, depression, stress, anxiety, emotional pain, suffering, inconvenience, mental anguish, embarrassment, humiliation, loss of enjoyment of life, and other non-pecuniary losses.

### COUNT V – WRONGFUL TERMINATION AND/OR RETALIATION AGAINST PUBLIC POLICY

74. Plaintiff incorporates paragraphs 1 through 73 as if fully set forth herein.

75. Plaintiff had filed a workers' compensation claim based upon her injury at work.

76. Defendant retaliated against Plaintiff in the terms, conditions and privileges of her employment because of her protected activity as set forth above, in violation of Workers' Compensation Act, 77 P.S. § 1.

77. Defendant's intent in discharging her from her employment was to retaliate for Plaintiff's exercise of her rights under the Workers' Compensation Act, 77 P.S. § 1 et seq., and that the discharge was in violation of the public policy of the Commonwealth of Pennsylvania.

78. As a direct and proximate result of Defendant's unlawful and discriminatory termination, she has suffered pecuniary losses including in the form of lost pay, wages and benefits, overtime, holiday pay, clothing allowance, vacation, sick and personal days, medical benefits, dental and vision benefits.

79. As a direct and proximate result of Defendant's unlawful and discriminatory termination, she has suffered extreme emotional distress, depression, stress, anxiety, emotional pain, suffering, inconvenience, mental anguish, embarrassment, humiliation, loss of enjoyment of life, and other non-pecuniary losses.

### COUNT VI – EQUAL PAY ACT

80. Plaintiff incorporates paragraphs 1 through 79 as if fully set forth herein.

81. During her employment with Defendant-Employer, Defendant-Employer paid Plaintiff, a woman, at a base pay less than the rates it paid male employees in the

same or similar job title for equal work on jobs requiring equal skill, effort, and responsibility and performed under similar working conditions.

82. Plaintiff complained to management that she was paid less than her male counterparts, similarly titled.

83. Despite the complaints, Defendant-Employer refused to rectify the situation.

84. During the period of employment, Defendant-Employer violated the Equal Pay Act, 29 U.S.C. Section 206(d), by paying wages to Plaintiff, a woman, at rates less than the rates it pays males in the same or similar job title in the same establishment for equal work on jobs requiring equal skill, effort and responsibility, and performed under similar working conditions.

85. Defendant-Employer's violation of the Equal Pay Act was willful.

PRAYER FOR RELIEF:

WHEREFORE, Plaintiff respectfully demands as follows:

a. That the Court find that Defendant-Employer's actions are unlawful;

b. That Defendant-Employer be required to compensate Plaintiff for the full value of wages and benefits she would have received had it not been for Defendant-Employer's unlawful treatment of Plaintiff;

c. That Defendant-Employer be required to compensate Plaintiff for all her lost wages and benefits due to her termination;

d. That she be provided any and all front-pay, including any difference in pay and benefits between any future employment and the instant employment with Defendant-Employer;

e. That Defendant-Employer be enjoined from discriminating against Plaintiff in any manner that violates her civil rights;

f. That Plaintiff be awarded against Defendant-Employer the costs and expenses of this Court action and any further action, including all reasonable attorneys fee as provided by statutes;

g. That Plaintiff be awarded against Defendant-Employer punitive and/or exemplary damages;

    h.       That Plaintiff receive compensatory damages since she has suffered extreme emotional distress, depression, stress, anxiety, emotional pain, suffering, inconvenience, mental anguish, embarrassment, humiliation, loss of enjoyment of life, and other non-pecuniary losses; and

    i.       That Plaintiff is granted such further legal and equitable relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Respectfully submitted,

/s/Dennis M. Moskal
Dennis M. Moskal, Esq.
PA I.D. # 80106

Law Offices of Dennis M. Moskal, LLC
Manor Building
564 Forbes Avenue, Suite 1006
Pittsburgh, PA 15219
Direct: (412) 992.0948
Facsimile: (412) 927.1147
dennis@harassment-doctor.com